UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-305-GWU

PAUL L. BARGO,                                           PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Bargo

    4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Bargo

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Bargo

>whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Bargo

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Bargo

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Paul L. Bargo, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of dysthymia versus substance-induced mood disorder, estimated borderline intellectual functioning, and a personality disorder. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Bargo retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the November 28, 2005 administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and no past relevant work experience could perform any jobs if he were limited to work involving simple, nondetailed tasks, where public and co-worker contact was casual and infrequent, where supervision is direct and nonconfrontational, and where changes in the

workforce were infrequent and gradually introduced, "in other words, so-called low stress work." (Tr. 45). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Bargo alleged disability beginning June 1, 1997 due to depression and back pain. (Tr. 83-4). According to the current ALJ decision, Mr. Bargo had previously received SSI benefits "due to a personality disorder and mental retardation" from June 1997 through October 2002. (Tr. 15). However, these benefits were terminated due to medical improvement and, although Mr. Bargo filed a request for a hearing, he failed to appear, his request for hearing was dismissed on July 19, 2004, and the Appeals Council denied his request for review on September 10, 2004. (Tr. 15, 50-1). The ALJ determined that, because Mr. Bargo received benefits through October, 2002 the unadjudicated period for his present application began November 1, 2004. (Tr. 15).

Mr. Bargo testified that the primary reason he was unable to work was nervousness around people and depression. (Tr. 35, 37). He lived by himself in an apartment, had help from his sister with housecleaning, and at times was so nervous

<div align="right">Bargo</div>

that he would not answer the door.  (Tr. 40).  He became nervous, even going shopping, and had given up his job at the restaurant because of being uncomfortable in public.  (Tr. 35).  He admitted that he had been jailed for marijuana possession and trafficking in 1990 for almost three years, and had a history of problems with drug and alcohol.  (Tr. 36, 37).  However, he had not used drugs or alcohol since he filed his current application.  (Tr. 37).  He had not gone beyond the ninth grade in school because he had to take care of his mother.  (Tr. 41-2).

      The plaintiff makes several specific objections to the administrative decision.

      First, the plaintiff asserts that it was error for the ALJ to find his back impairment to be "non-severe."  While a state agency physician, Dr. Timothy Gregg, opined on January 26, 2005 that there was no evidence of a "severe" physical impairment (Tr. 239), Mr. Bargo points to the November 30, 2005 opinion of his treating family physician, Dr. Truman Perry.  Dr. Perry limited the plaintiff to lifting a maximum of five to ten pounds, standing or walking no more than 15-20 minutes in an eight-hour day, sitting 15 to 20 minutes, "never" climbing, kneeling, crouching, and crawling, occasionally stooping and balancing, as well as having restrictions on pushing and pulling.  The only reason given was "lumbosacral pain."  (Tr. 806-7). The ALJ rejected Dr. Perry's opinion because it was not supported by objective evidence.  (Tr. 18-19). The plaintiff admits that the office notes submitted by Dr. Perry are difficult to read  (Tr. 198-201, 797-802), but points to an MRI of the

Bargo

lumbosacral spine obtained by Dr. Perry dated June 20, 2002. While the MRI reportedly did show "some degree of desiccation at the level of L4-5 and L5-S1," it also showed that the vertebral bodies were well aligned, disc height was well maintained, and there was no focal herniation or spinal stenosis. (Tr. 748). The radiologist concluded that there was "no significant abnormality." (Id.). A reasonable finder of fact could have concluded that this study failed to support Dr. Perry's extremely restrictive assessment. Moreover, to the extent that Dr. Perry's notes from the relevant period in 2004 and 2005 are legible, they do not show any objective abnormal findings regarding the plaintiff's back pain apart from tenderness, with the physician apparently noting that Mr. Bargo was neurologically intact. (Tr. 799-800). Mr. Bargo apparently told the physician that his back hurt "at times." (Tr. 798, 800). The notes also showed that Mr. Bargo injured his head "riding a 4-wheeler... through an electric fence" in May, 2005. (Tr. 800). The ALJ reasonably questioned the credibility of the plaintiff's allegations of disabling lumbosacral back pain in light of this activity. (Tr. 19). The opinion of even a treating source must be based on sufficient objective findings. <u>Hardaway v. Secretary of Health and Human Services</u>, 823 F.2d 912, 927 (6th Cir. 1987); 20 C.F.R. Section 416.927. Under the circumstances of this case, the determination not to give the treating physician opinion controlling weight is supported by substantial evidence.

Bargo

Next, the plaintiff alleges that he meets the requirements of the Commissioner's Listing of Impairment (LOI) 12.05C, captioned "Mental Retardation and Autism." The relevant portions of the regulation state that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of impairment before age 22" and the individual shows a "valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App.1, Section 12.00 (2006).  The plaintiff correctly notes that the only direct evidence of IQ scores are from a consultative examination conducted by psychologist Kenneth Starkey in October, 2004.

Dr. Starkey obtained a verbal IQ of 74, a performance IQ of 65, and a full-scale IQ of 67, but commented that "due to personality factors and mood disturbance" the scores appeared to be an underestimate of Mr. Bargo's true intellectual abilities, which he placed in the range of borderline intellectual functioning.  (Tr. 176).  The plaintiff notes that the ALJ had indicated in his decision that the prior SSI award had been partially based on mental retardation, and suggests that if records from the prior application had been available for Dr. Starkey's review, he might have determined that the scores were valid.  This,

Bargo

however, is only speculative, and extensive records of the plaintiff's mental health treatment from 1998 and 1999, for polysubstance dependence, a history of hallucinogenic, cocaine, and benzodiazepine abuse, and probable major depression with substance-induced mood disorder (Tr. 243-691) do not contain any IQ scores or indication of mental retardation. In fact, a counselor noted in 1998 that the plaintiff reported a ninth grade education and that he received a GED while in the penitentiary. (Tr. 248). Moreover, Dr. Starkey's indication that a "mood disorder" reduced the plaintiff's IQ scores should be placed in the context of his ultimate conclusion that the mood disorder was substance-induced. (Tr. 179). Under the provisions of Public Law 104-121, drug and alcohol abuse cannot be the basis for a finding of disability. Finally, it should be noted that Mr. Bargo's school records, while indicating that he did not complete the ninth grade, do include testing given in the seventh grade which showed his "reading comprehension" at the 8.4 grade equivalent, "reading vocabulary" at the 5.3 grade equivalent and "total reading" at the 6.9 grade equivalent. (Tr. 123). This level of ability would not be indicative of a mental impairment manifested before age 22 as required by the listing. See Foster v. Halter, 279 F. 3rd 348, 354 (6th Cir. 2001).

The plaintiff additionally argues that, if there was a previous finding of mental retardation, it should be given preclusive effect under the holding of Drummond v. Commissioner of Social Security, 126 F. 3rd 837 (6th Cir. 1997). Drummond, and

Bargo

Acquiescence Ruling 98-4(6), state that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. Id. at 842. There is no indication, however, that there was an ALJ decision on the previous application. Drummond specifies that res judicata applies in an administrative context following a trial type hearing, and, in the present case there is no proof of a previous adversarial proceeding. Id. Additionally, the Commissioner ultimately determined that there had been medical improvement and that the plaintiff was no longer disabled, and the plaintiff failed to exhaust his administrative remedies; therefore, the final decision in the previous period presumably was that the plaintiff was not mentally retarded. For all these reasons, Drummond is not applicable to the plaintiff's 12.05C claim.

The decision will be affirmed.

This the 18th day of April, 2007.



Signed By:
**G. Wix Unthank**
**United States Senior Judge**